Good morning, Mr. Brooks. Good morning, Your Honor. Chief Justice, may I ask for two minutes Yes. Thank you. Benjamin Brooks, on behalf of Mr. Arif, may it please the Court. What I think is the most compelling piece of Mr. Arif's argument here is that when Congress specifically considered the precise activity in which Mr. Arif engaged, and when it set out the Wheeler-Ley amendments, it set forth a regulatory and penal scheme and set forth these graded civil and criminal penalties, and Congress determined that the maximum penalty for a first offense of fraudulent advertising would be a sentence of six months incarceration. Now, Mr. Arif is serving a sentence that's 12 times higher than that, and this, of course, was because he was prosecuted under the Water Fraud Statute. And in situations like this, where there is a statute that more specifically describes the defendant's conduct and sets out this graded set of criminal penalties to address that conduct, it is a kind of end-around congressional intent to simply charge and prosecute the defendant under a more broadly applicable statute that has potentially a higher criminal penalty. Now, of course, it happens frequently, and we don't deny this, that wire fraud is brought in conjunction with other statutes in parallel contexts that might be more specifically applicable to the defendant's conduct. But a few points about that that I wanted to make are, one, the first thing is, as far as I know, this is the first time that a court is addressing the specific interplay between the Wheeler-Ley amendments of the FTCA and the Wire Fraud Statute in a criminal context. The second thing is, which really was not made so clear in the briefing, is that if you look at the history of the manner in which people who were similarly situated to Mr. Arif have been treated, it appears that they have generally been charged civilly by the FTC and not charged criminally. How do we know that? There is a list of cases that set out in the record appendix at 89 to 92, and all of these cases involved defendants who were sort of peddling some kind of elixir or nostrum or remedy. That just tells us that on some occasions the government has exercised its discretion to charge as one thing, while on other occasions the government has exercised its discretion to charge another offense. Isn't that relatively common in the criminal law, that there are overlapping offenses that the prosecution has some discretion as to which to charge? It isn't uncommon for there to be overlapping charges. I think what is uncommon is a situation like this, where you have a statute that really specifically identifies this particular conduct and then sets out these graded penalties, like a penalty scheme for conduct that fits within that. And I think in those situations there is an indication of congressional intent that all conduct that fits within the ambit of that statute will be punished according to this particular scheme that Congress meticulously sets out. It's not clear to me whether you're making an argument of implied repeal of the Waterfrog statute where the FTCA applies, or whether you're making an argument that discretion has been withdrawn from the prosecutor to bring such a charge. I think this is a matter of congressional intent here, and I think the answer is that the discretion here has been withdrawn. You say that we can reach that conclusion because of the disparity in sentences. Do you have a case for that proposition? Well, it's not just that there's a disparity in the sentences. It's that the conduct is specifically identified, and then not only is there a disparity in the sentences, but Congress has set forth a really comprehensive scheme for addressing this conduct. So instead of field preemption, you take that civil idea and you transfer it to the criminal law. Well, it's not quite preemption, because what it is here is the rule that's set out in BUSIC, which is that when there is a criminal statute that more specifically identifies the conduct that is at issue, and that treats it with this kind of comprehensive sentencing scheme, in those instances, the more specific statute has to be given precedence, preclusive effect, over the more specific statute. And that's exactly what happened in BUSIC, where you had two criminal provisions. And I think what's important about BUSIC to understand, too, is that the criminal provisions at issue there were both equally applicable to the defendant's conduct. But there was no question, like the government raises in Dowling, of saying, well, in one situation, the defendant's conduct didn't quite fit neatly within the statute. In BUSIC, it was very clear. The defendant's conduct fit the crime of assault on a federal officer. It also fit the crime of committing a felony using a firearm. But the court said, well, the first statute, the one that addresses the assault on the officer, is the one that more specifically describes the defendant's conduct. That has its own set of criminal provisions and its own set of enhancements. And in that situation, you have to give that statute precedence over only a more broadly statute. I think that's the exact same situation that we have here, where you have the FTCA that sets out these graded penalties, and then you have this only more broadly applicable wire fraud statute. You're not saying that the crime charged, the government doesn't have enough proof to establish that crime, assuming there was no FTC statute. That's not necessarily the case. Is that clear? Yeah. If that is the case, and I assume that's the case, I don't understand how you can claim that a statute that was passed in 1938, I believe, somehow overrules a later statute passed by Congress. Well, I think there's two answers to that. The first is, when reading Musick, the rule that they're applying there is the more specific criminal statute gets precedence regardless of when that statute was passed. And I think in that case, in fact, using a firearm during the commission of felony was actually passed after the assault on the federal officer case. And the second reason is that the wire fraud statute and the mail fraud statute are generally considered to be sort of sister acts. And the mail fraud statute was passed before the FTCA. Thank you. Thank you. Good morning. Seth Lavering for the United States. Let me begin by saying that the government believes this is a case of implied repeal, in the sense that we have two statutes that both cover the same conduct. And they can run in parallel. And the implied repeal doctrine is an important one. It's an important one for the reasons Justice Scalia explained when he was a judge on the DC Circuit, which is it provides a rule for the game that tells legislators that unless you say otherwise, we will presume that both statutes you pass will be operated harmoniously, which means that the government can choose which one to apply. The argument that was just made of a case that was relied on, which came up in the implied repeal, which I just want to say a word about before I continue. The key in that case was not this, the general government's specific. The key in that case was the discussion of the legislative history, which showed that the representative who proposed 924C said specifically this 924C was not intended to be used when the federal assault statute's gun enhancement was used. That is, Congress, the Supreme Court said, Congress thought about this problem and specifically said, this is how we want you to deal with the interplay of these two statutes. We don't have that here. And if anything, we have legislative history that says that the criminal provision of the FTCA was a cumulative remedy to existing penalties. I'm sorry, are we actually supposed to go so far as to look at the legislative history? No, I don't think so. Okay, I just looked at the district court opinion on this question of implied repeal, and there's no mention of the Busick case in it. Was the Busick argument presented to the district court? Well, I'll just tell you from my review of the whole record and writing the appeal and doing everything, I was not aware of the Busick case's importance to this until I read the reply brief in this court. Well, I'll ask counsel, and I expect you to answer that for me later. And it was raised in this court for the first time in the reply brief? That's correct. The Dowling case was the case that was relied on in the lead brief, and I distinguished that in my brief. And so I think that's the state of the record, and I understand it. But I do think even still, I read clearly the Busick case after it was decided, and I think that there is an important distinction to be made, which was Congress thought about that specifically in that context. And here, we don't have that. And I'm not saying that the legislative history of the FTCA provides the answer. What I'm saying is it either favors the government or it's inconclusive. But if it's inconclusive, that's the point, because then we're supposed to apply both statutes. It is not unusual for Congress to have enacted specific fraud statutes in a whole series of areas, and yet to have wire fraud or mail fraud still be the charged crime. This focus on graded penalties, I think that's a little overstated. I'm not sure the legal significance of it. But even if it has some legal significance, these are not particularly graded. Six months for a first offense, a year for a second offense. That's not particularly complex by any means. So it's just another criminal statute that can be used to target false advertising. But there's nothing that suggests it's exclusive. Is there anything in the Supreme Court case law that says we should look at the difference in penalties? His argument isn't about grading. His argument is that the penalty actually imposed was 12 times the maximum penalty. I would say the government case is Batchelder. In Batchelder, there were two gun provisions that applied to the exact same conduct. One had a two-year sentence. One had a five-year sentence. The government charged the five-year case. The district court imposed the maximum penalty. The defendant came to the Supreme Court and said, no, I only should get the two-year penalty because it's the same conduct. And Congress penalized that with two years. So under some kind of lenity concept, I should get the two years. The Supreme Court said, no. These are separate statutes. There's no indication of implied repeal. Yes, it covers the same conduct. The choice rests with the government. And when the government selects to go with the harsher one, you can get the five years. When you say it covers the same conduct, isn't in one of the statutes there an additional element, the element of using the wires? Yes. I'm not going to mention about these gun charges in that case. Here, you're right. So these are not, if we were doing a walk-order analysis, these are not the same effects. And at the time, the statute, part of it is that the time the statutes were passed, using the wires was not so ever-present as it is today. I'd say that's true. The mail and wire fraud statutes, I mean, the wire fraud statute certainly is a very broad statute at this point because of changes in technology. I mean, to answer Judge Torea's question, I treated this case in my briefing as if the mail fraud statute and the wire fraud statute are in tandem. And the question for me was whether the FTC impliedly repealed the mail fraud statute, although I understand your point, Judge Torea. So in any event, they are clearly different elements. One, the FTC requires proof of false advertising as an element. The wire fraud statute doesn't require that. It just requires a schema artifice to defraud, and yet that statute requires the use of the wires. So they are different crimes. They have different penalties. Could the same actus reus fit within both? Yes. There's nothing unusual about that. That is a common feature of federal criminal law. So that's really the core of the government's argument. If we're going to – if this argument is right, we are making a sea change in how we have dealt with the way Congress legislates, which is they pass statutes, they pass other statutes. It's sometimes the actus reus fits both statutes, and we do say in that context it's the government's choice. This argument of the specific governs the general, as a general rule, would really upset a lot of standing law about how we do criminal law in this country, federal criminal law at least. So that's the government's argument on the implied repeal doctrine. I am pleased to talk about any other issues in the case. There's a question of whether the defendant could have committed fraud in these circumstances because he truly believed in the drugs. That's the second issue in the case. The government's position would be that's not the issue in the case. The issue in the case is how did he get the people to buy the drugs. He got the people to buy the drugs by lying to them in a whole number of different ways. That's fraud. Whether in the end he thought what he was giving them was really good for them, if we assume that's true. He still got them to par with their money by telling them falsehoods. That's the essence of fraud, no matter what was in his heart. What he put out on digital paper was false. Some of the transactions involved as a falsity under the government's theory only the listing of an address that wasn't actually where he was. Is that fraud? It seems in many transactions people set up mailboxes or post office drops where they have stuff. I think one could make that argument as an argument to our jury. But I think the contrary argument is that we tend to think that drugs produced in western, if you're in a westernized nation like the United States, that there's a reason you would look to other westernized countries as giving you confidence that this drug is subject to certain kinds of controls. And those addresses give that feeling. So this defendant admitted that the reason he did that was to make his customers more comfortable. Well, that comfort is false. And that is a lie. If that were the only thing charged here, well, let me go back. Did the government actually argue to the jury that this use of false addresses was itself a wire fraud? Or was it merely evidence in support of the falsity claim? That. So he pled guilty, first of all. So we were in a conditional appeal. So he pled guilty. He agreed to a statement of facts. And one of the facts that he agreed to is the reason he said drugs were from Switzerland and New Zealand and Australia instead of Pakistan was because that gave comfort, he believed, to his audience, to his buyers. And that was false. He was making them in Pakistan. And so that was one of the misrepresentations that undergirded the government's case. If we exclude those transactions where the only alleged falsity was the address from the loss calculation, does it actually make any difference? No. We end up in the same tier. I believe that that is correct. And in any event, this is a harmless error of sentencing case. Judge McCaffrey was very clear that based on all the circumstances here, 72 months, which is way below the guideline range she found, was the right sentence. So for those reasons, the government rested its brief. Thank you. Thank you. Sir? Thank you. Just quickly, with respect to Batchelder, which is often cited for this proposition that the government has the choice to choose between two applicable statutes, that is not the same situation that we have here. Batchelder involved two statutes that were both equally specific to the conduct that was at issue. Both of them were for felons. Assault and murder are quite specific, aren't they, with numerous elements, and yet the same act as Reyes could give result to a murder charge, or it could be an assault with a deadly weapon charge, or it could be second-degree assault. Right. So when you say in those cases the government, how would the government go about choosing? Well, no, I think in those situations the statute that is specifically applicable to the conduct, it was in the same manner. In this situation, you have a case where the Wirefall statute is sort of extremely broad, and then you have this very narrow statute that says we've identified this exact conduct that Mr. Reif engaged in, here's what we're going to do. But the FTC isn't the exact conduct, because that statute doesn't mention anything about water fraud, but the Water Fraud statute specifically hones in on transactions involving the use of waters, which the other FTC statute does not. Well, but the FTC statute does mention males, by males, right, and of course it was passed before the Water Fraud statute, and then it says we'll by any other means, and I think because the males in the Water Fraud statute have always been analyzed in tandem, if you do sort of a modified block-order test, they have the same exact conduct. Counsel, please answer my question. Did you make the Busick argument before the district court? Busick was not cited as a... Why do you feel free to make it to us in a reply brief? I don't think Busick is setting out a new theory. I think Busick is just offering more support for the theory which we've been putting all along. Thank you. Thank you.